IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-cr-30060 |
| ) | |
| MARK RANDLE, ) | |
| ) | |
| Defendant. ) | |

OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant Mark Randle's Motion to Suppress Evidence [Doc. 30].

I.   **INTRODUCTION**

Defendant Mark Randle is charged with one count of Possession with Intent to Distribute 50 Grams or More of Methamphetamine (Actual), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). (Doc 1, Indictment.) Defendant has filed a Motion to Suppress, alleging (1) no law enforcement officer had probable cause to believe a traffic violation occurred which would justify a traffic stop of Defendant; (2) the traffic stop was prolonged in violation of the law; (3) Defendant did not voluntarily consent to the search of the vehicle; (4) Defendant was unlawfully detained in the officer's squad car; and (5) there was no lawful basis to search the vehicle. (Doc. 30, 3.) In its Response, the Government claims law enforcement had a reasonable articulable suspicion and

probable cause to believe Defendant was engaged in drug trafficking activities based on an undercover purchase that had occurred. (Doc. 42, 7.) Moreover, officers witnessed Defendant commit at least one traffic violation, providing probable cause to stop Defendant's vehicle. (*Id.*) During the traffic stop, a narcotics K-9 alerted, giving the officers probable cause to search Defendant's vehicle which resulted in the seizure of the evidence underlying the charges in this case. (*Id.*)

On April 12, 2023, the Court held an evidentiary hearing on Defendant's Motion to Suppress. (Minute Entry of 4/12/2023.) The parties have now filed their closing arguments. (Doc. 44, Doc. 45.)

## II.    BACKGROUND

Illinois State Trooper Justin Ebbing testified that in August and September of 2020, he was employed as a police officer with the Quincy Police Department, while also serving as a Task Force Officer with the Illinois State Police and FBI. (Doc. 43, Tr. 42-43.) On August 12, 2020, Officer Ebbing became involved in an investigation of Defendant after learning of the arrest of another individual. (*Id.* at 43.) Officer Ebbing and another officer traveled to the Sangamon County Jail to interview that confidential source ("CS"), who informed the officers he was involved in methamphetamine transactions with Defendant. (*Id.*)

Officer Ebbing testified he and other officers traveled to the Chicago area with the CS on or about September 3, 2020, in order to facilitate a drug transaction between the CS, Defendant, and their Chicago area source of supply. (*Id.* at 45.) The transaction was to take place at a Hyatt Hotel in Rosemont, Illinois. (*Id.* at 46.) Officer Ebbing and

other officers conducted surveillance in the area. (*Id.*) While Officer Ebbing observed a silver Nissan arrive at the hotel, he listened to a conversation between the CS and Defendant. (*Id.* at 46-47.) Officers saw the CS get into the car, after which the CS, Defendant, and Monique Jones exited the vehicle and entered the hotel. (*Id.* at 47.) Officer Ebbing testified officers observed the CS meet with Berto Figuerello, the Chicago source of supply, later that day. (*Id.*)

On the evening of September 3, 2020, agents and other officers met with the CS, who gave one of the agents approximately 55 grams of methamphetamine and returned the covert recording device. (*Id.* at 48.) The CS explained he had retrieved the drugs from Figuerello, went back to the hotel room, and gave the drugs to Defendant. (*Id.*) Officer Ebbing testified Defendant had given the CS that 55 grams as payment for facilitating the transaction. (*Id.*)

The next morning, officers observed Defendant and Ms. Jones re-enter the silver Nissan. (*Id.*) Before exiting the hotel, Defendant placed a bag in the trunk. (*Id.* at 49.) Officers followed the vehicle when it left the hotel and traveled southbound from the Chicago area. (*Id.*) Officer Ebbing testified they had arranged for troopers in the Springfield area to be prepared to conduct a traffic stop on the vehicle, which is a common law enforcement tactic when conducting a drug investigation. (*Id.*)

Illinois State Police Trooper Joseph Gray made the traffic stop of Defendant for allegedly following too closely. (*Id.* at 8.) During the traffic stop, Trooper Gray asked Defendant to sit in the squad car while he wrote Defendant a warning. (*Id.* at 8-9.) At the time, other officers who were part of the investigation were also in the area. (*Id.* at 9-

10.) Trooper Gray planned for Illinois State Police Trooper Josh Ushman to conduct a dog sniff of the vehicle with his K-9 while Gray worked on the warning citation. (*Id.* at 10.) Trooper Gray testified Defendant appeared to be extremely nervous during the traffic stop while being questioned by Sergeant Eli Adams, which was corroborated by the video of the stop. (*Id.* at 23-25.) Defendant gave consent for the K-9 to conduct a sniff of the vehicle. (*Id.* at 11.) Trooper Ushman, who is now an Illinois State Police Division of Internal Investigation Special Agent, testified the K-9 alerted to the presence of narcotics, and the officers on the scene were notified there had been a positive alert. (*Id.* at 33, 37.)

At one point during the traffic stop, Defendant fled on foot before officers took him into custody. (*Id.* at 50.) Officer Ebbing testified a search of the vehicle resulted in approximately three pounds of methamphetamine found in the trunk. (*Id.* at 51.)

### III.  DISCUSSION

#### A. Applicable Law

A police officer may stop a vehicle if the officer has reasonable suspicion of a traffic violation. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021). The question is whether the officer reasonably believed the driver committed a traffic violation, not whether the driver actually committed a traffic violation. *Id.* at 428. An officer's estimation of a short following distance is enough to justify a traffic stop for a violation of 625 ILCS 5/11-710. *Id.*

Traffic stops are limited in scope but allow the officers to investigate the violation. *Id.* at 427-28. A "detour" from the initial basis for the traffic stop "violates the

Fourth Amendment unless the officer has reasonable suspicion of other criminal activity to independently justify prolonging the stop." *Id.* at 428. A police officer is permitted to ask a driver to sit in the officer's car for the duration of a traffic stop even absent any suspicion of dangerousness. *United States v. Goodwill*, 24 F.4th 612, 615 (7th Cir. 2022). An officer may ask the individual questions unrelated to the stop as long as the questions do not extend the stop for a period longer than reasonably necessary to complete the mission of the stop. *Id.* at 615-16. A dog sniff does not violate the Fourth Amendment, even absent reasonable suspicion, unless the sniff prolongs the stop beyond the time reasonably necessary to accomplish the stop's original purpose. *United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019).

### B. Traffic Stop

Trooper Gray testified Defendant was following too closely in that he was less than one car length behind the vehicle in front of him on I-55. (Doc. 43, Tr. 15.) Defendant testified he was not following too closely and was at least two to three car lengths behind the vehicle in front of him. (*Id.* at 70-71.) While it is difficult to determine from the video the precise distance between Defendant and the car in front of him, the vehicles did appear to be close to one another. Additionally, during the traffic stop, Defendant admitted he was too close to the vehicle in front of him which may have slowed down due to the presence of the officer's squad car. The Court concludes Trooper Gray had at least a reasonable belief Defendant was following the car in front of him too closely, thereby justifying the traffic stop.

Following the traffic stop, Trooper Gray exited his squad car to make contact with Defendant on the side of the road at approximately 2:50 of the video that was admitted as Government Exhibit 1, Video 1. At approximately 5:40 of the video, Trooper Gray asked Defendant to sit in the front of the squad car, which the officer was entitled to do. *See Goodwill*, 24 F.4th at 615. Trooper Gray worked on the traffic citation while asking Defendant questions. Defendant consented to a K-9 sniff of his vehicle. The video shows the K-9 alerted approximately 10 minutes after Trooper Gray first made contact with Defendant and less than 13 minutes after the beginning of the traffic stop. Given the amount of time that passed, neither the questions of Defendant nor the K-9 sniff extended the stop beyond the time reasonably necessary to accomplish the stop's purpose. *See United States v. Lickers*, 928 F.3d 609, 617 (7th Cir. 2019) (finding that arrival of K-9 unit within approximately 20 to 30 minutes was not unreasonable delay); *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005) (K-9 unit's approximately 20 minute response time was not an unreasonable delay). Even if the traffic stop had been prolonged beyond the time reasonably necessary to accomplish the purpose of the stop, the officers by then had reasonable suspicion of other criminal activity based on the drug investigation. The K-9 alert provided the officers with probable cause to search the vehicle. *See United States v. Simon*, 937 F.3d 820, 833 (7th Cir. 2019) (a properly certified dog's alert provides officers with probable cause to search vehicle).

The video of the traffic stop also showed that Defendant consented to a search of the vehicle, responding to the officer's inquiry by saying "Go ahead, I don't give a damn." While Defendant claimed he felt he was "being forced to comply" because he

was in a squad car with one officer in the vehicle and another officer speaking to him through the window (Doc. 43, Tr. 76), those factors do not render Defendant's consent involuntary based on the totality of the circumstances. It makes no difference that Defendant was in the patrol car during the questioning. *United States v. Ambriz-Villa*, 28 F.4th 786, 790 (7th Cir. 2022) ("Ambriz-Villa provides no authority for the proposition that the legality of an officer's questioning differs whether it's done while the traffic offender is outside the patrol car or in it, and we could find none.") The fact that Defendant was questioned by two officers while several officers were present also does not make Defendant's consent involuntary. *See United States v. States*, 652 F.3d 734, 740 (7th Cir. 2011) (noting the argument that the presence of several officers at the scene renders a confession involuntary "gains little traction"). Based on the totality of circumstances, the Court concludes Defendant's consent to search the vehicle was voluntary. Therefore, Defendant's arguments concerning the traffic stop and search of the vehicle do not warrant suppression of the evidence and statements.

### C. The Drug Investigation

As the Government alleges, officers conducting the drug investigation had probable cause to believe a crime had occurred independent of the traffic stop. "A police officer has probable cause to believe that an individual has committed an offense (and to make an arrest) if the facts and circumstances known to him would warrant a reasonable person believing that the individual has committed or is committing a crime." *Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014). Similarly, "[a] police officer has probable cause to conduct a search when the facts available to him would

warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotations omitted). Courts typically look to the totality of circumstances in determining whether probable cause exists. *Id.* at 243-44. Probable cause is not a particularly high standard and is less than a preponderance of the evidence. *United States v. Simon*, 937 F.3d 820, 833 (7th Cir. 2019). While warrantless searches are generally presumed unreasonable, a law enforcement officer may conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains contraband or evidence of a crime. *United States v. Harris*, 791 F.3d 772, 778 (7th Cir. 2015). An officer can also search a vehicle incident to arrest if they have a reasonable belief that evidence of the crime of arrest can be found in the vehicle. *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014).

The record establishes that, based on their investigation and surveillance, the officers conducting the drug investigation involving Defendant had reason to believe he had committed a crime and had probable cause to believe evidence of that crime or crimes would be found in the vehicle he was driving. The officers had evidence which led them to reasonably believe or know Defendant had traveled to Chicago to buy three pounds of methamphetamine, Defendant had met with the CS, the transaction occurred inside Defendant's hotel room, and Defendant had left the next morning and began traveling south towards St. Louis. Therefore, it was reasonable for the officers to believe that evidence of Defendant's drug trafficking would be found inside the vehicle. Defendant cites a number of factors which he claims establish probable cause was lacking, including that (1) the methamphetamine was not tested; (2) there was no

surveillance of the alleged drug transaction as it occurred; (3) the video and audio recording of the drug transaction had not been reviewed; and (4) the information from the informant was not independently verified. (Doc. 44, Def. Mem. Supp. Mot. Supp. Evid. 3-4.) While the evidence the officers were aware of at the time of the search might not be enough to meet certain standards of proof, the Court concludes it is more than sufficient to meet the relatively low probable cause standard. For all of these reasons, Defendant's arguments as to why the evidence must be suppressed are without merit.

Therefore, Defendant Mark Randle's Motion to Suppress Evidence [Doc. 30] is DENIED.

ENTER: July 6, 2023

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE